Max R. Tarbox; SBN: 19639950
TARBOX LAW, P.C.
2301 Broadway
Lubbock, Texas 79401
(806)686-4448; FAX (806)368-9785
*Attorneys for Galmor's/G&G Steam Service, Inc.*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| In Re: | § | |
| | § | Chapter 11 Proceeding |
| Galmor's/G&G Steam Service, Inc., | § | |
| | § | 18-20210-rlj11 |
| *Debtor*. | § | |

**DEBTOR'S COMBINED DISCLOSURE STATEMENT
AND PLAN OF REORGANIZATION**

**October 17, 2018**

This *Debtor's Combined Disclosure Statement and Plan of Reorganization* is filed by the above-referenced Debtor.

**ARTICLE I
DEFINITIONS**

**Definitions:** The following terms, when used in the Plan, shall, unless the context otherwise requires, have the following meanings, respectively:

**Allowed Amount** shall mean:

a. with respect to any Administrative Claim, other than a Current Obligation, if the claim is based upon a fee application, the amount of such fee application that has been approved by a Final Order of the Bankruptcy Court; with respect to any current obligation, the amount of such claim that has been agreed to by the Debtor and such creditor, failing which, the amount thereof as fixed by a Final Order of the Bankruptcy Court;

b. with respect to a Tax Claim, the amount of such claim that has been agreed to by the Debtor and such creditor, failing which, the amount thereof as fixed by a Final Order of the Bankruptcy Court;

c. with respect to any Priority Claim, Secured Claim, Unsecured Claim, or Subordinated Claim, (i) if the holder of such claim has not filed proof thereof with the Bankruptcy Court within the applicable period of time fixed by the Bankruptcy Court pursuant to Rule 3003(c)(3) of the Bankruptcy Rules and a Final Order issued thereunder, the amount of such claim as listed in the Debtor's Schedules, as amended, as neither disputed, contingent or unliquidated; or (ii) if the holder of such claim has filed proof thereof with the Bankruptcy Court within the applicable period of time fixed by the Bankruptcy Court pursuant to Rule 3003(c)(3) of the Bankruptcy Rules and a Final Order issued thereunder, (1) the amount stated in such proof if no objection to such Proof of Claim was interposed within applicable period of time fixed by the Bankruptcy Code, the Bankruptcy Rules or the Bankruptcy Court, or (2) the amount thereof as fixed by Final Order of the Bankruptcy Court if an objection to such proof was interposed within the applicable period of time fixed by the Bankruptcy Code, the Bankruptcy Rules or

1 of 20

the Bankruptcy Court;

  d.  otherwise, an Allowed Amount shall mean any claim for which an allowed amount has been determined.

  **Ballot Date:** shall mean the date set by the Bankruptcy Court as the last date for timely submission by a creditor or interest holder of a ballot accepting or rejecting the Plan.

  **Chapter 7:** Chapter 7 of the United States Bankruptcy Code.

  **Chapter 11:** Chapter 11 of the United States Bankruptcy Code.

  **Claim:** shall mean:

  a.  a right to payment from the Debtor, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or

  b.  a right existing or deemed to exist as at the filing date as against the Debtor to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

  c.  The deadline to file proofs of claim is October 31, 2018.

  **Clerk:** Clerk shall mean the Clerk of the Bankruptcy Court for the Northern District of Texas, Amarillo Division, who is located at the U.S. Bankruptcy Court 205 Southeast 5th Ave, Room 133 Amarillo, Texas 79101-1559.

  **Confirmation of the Plan:** The entry by the Court of an Order Confirming the Plan in accordance with Chapter 11 of the United States Bankruptcy Code.

  **Consummation of the Plan:** The commencement of payments provided for in the Plan.

  **Court:** The United States Bankruptcy Court for the Northern District of Texas, Amarillo Division, acting in this case.

  **Current Obligations:** "Current Obligations" shall mean any accounts payable or other claims, liabilities or obligations of the Debtor which arose or accrued in the ordinary course of business between the filing date and the confirmation date (excluding interest, penalties, costs, assessments, or other charges incurred or accruing during the Chapter 11 case on any claim which arose before the filing date) which obligations of the Debtor arose or shall arise in the ordinary course of the Debtor's business between the filing date and the confirmation date and any post-confirmation amounts as referenced in Article X. Means for Execution of Plan and including professional, U.S. Trustee, and Disbursing Agent fees and expenses.

  **Debtor:** The Debtor in this Chapter 11 case is Galmor's/G&G Steam Service, Inc. and is sometimes referred to as "Debtor."

  **Disclosure Statement:** "Disclosure Statement" shall mean the Disclosure Statement filed on behalf of the Debtor pursuant to § 1125 of the Bankruptcy Code in aid of confirmation of the Plan, as may be amended, modified or supplemented. The Disclosure Statement in this case is combined with the Plan.

  **Disputed Claim:** "Disputed Claim" shall mean any claim or any portion thereof (including any fee claim but excluding all allowed claims):

a.      which is scheduled in the Debtor's Amended Schedules as being disputed, contingent or unliquidated; or

b.      as to which (i) a proof of claim has timely been filed, (ii) an objection has been timely filed by or on behalf of the Debtor or any other party in interest and not withdrawn, and (iii) no Final Order exists allowing or disallowing such claim or portion thereof.

In the event that any part of a claim is disputed, such claim in its entirety shall be deemed a disputed claim for purposes of distribution under the Plan, unless the Debtor and the holder thereof otherwise agree.

**Effective Date:**  The date upon which the Order of Confirmation of the Plan becomes final and non-appealable.

**Equity Interest Holders:**  The holders of any equity interests in the Debtor.

**Estate:**  The estate of the Debtor created in this Reorganization Case by Section 541 of the Bankruptcy Code.

**Filing Date:** June 19, 2018, the date of filing of the Debtor's Petition for Relief under Chapter 11.

**Final Order:**  An order or judgment of the Court (i) as to which the time for appeal has expired and no appeal was filed timely or if an appeal has been filed no stay has been issued or (ii) from which any appeal has been finally determined or dismissed.

**Internal Revenue Code:**  Title 26 of the United States Code, as last amended.

**IRS:**  The United States Internal Revenue Service.

**IRS Priority Claim:** Any Tax Priority Claim due and payable to the IRS, specifically excluding IRS Non-Priority Unsecured Claims.

**IRS Unsecured Non-Priority Claim:**  Any Claim of the IRS that is not entitled to priority under Section 507 of the Bankruptcy Code.

**Plan:**  This Plan of Reorganization.  Pursuant to 11 U.S.C. § 1121, the Debtor has the exclusive right to file a plan until after 120 days after the date of the order for relief under this chapter.  After the 120-day period, any party in interest may file a plan.  11 U.S.C. § 1121(B) establishes October 17, 2018 as the deadline for the Debtor's exclusivity period.

**Plan Payment(s):**  "Plan Payment(s)" shall mean any payment made by the Debtor to a creditor or class of creditors under this Plan, or to a Confirmation Deposit Account.

**Priority Claim:**  Any Claim entitled to priority pursuant to Section 507 of the Bankruptcy Code, except a Claim that is an Administrative Expense.

**Pro Rata**:  The same proportion an Allowed Claim in a particular Class bears to the aggregate amount of all Allowed Claims in such Class.

**Reorganized Debtor:**  Galmor's/G&G Steam Service, Inc., as existing subsequent to the Effective Date after reorganization pursuant to the Plan.

**Schedules:**  "Schedules" shall mean the Schedules of Assets and Liabilities filed by the Debtor with the Bankruptcy Court in accordance with Bankruptcy Rule 1007, as they have been or may be amended or supplemented from time to time in accordance with Bankruptcy Rule 1009.

**Secured Claim:** Any Claim secured by a lien or security interest on property of the Debtor, which is valid, perfected, and enforceable under applicable law, is not subject to avoidance under the Bankruptcy Code or other applicable non-bankruptcy law, and is duly established in the Reorganization Case, but only to the extent of the value of the property that secures payment of the Claim.

**Secured Claimant:** The holder of a Secured Claim.

**Secured Tax Claim:** Any Secured Claim due and payable to a taxing authority.

**Tax Priority Claim:** Any Priority Claim due and payable to a taxing authority.

**Unsecured Claim:** Any Claim that is not an Administrative Expense, Secured Claim or a Priority Claim and may also be referred to herein as "General Unsecured Claim."

**Unsecured Claimant:** The holder of an unsecured claim.

**With Interest:** This term shall mean an annual fixed percentage rate of six percent (6%) unless text indicates a different rate of interest.

## ARTICLE II
## EXPLANATION OF PLAN AND DISCLOSURE STATEMENT

### A. Purpose of Disclosure Statement

Galmor's/G&G Steam Service, Inc. (the "Debtor") submits this Plan and Disclosure Statement pursuant to Section 1125 of the Bankruptcy Code in connection with the Debtor's Plan, which is incorporated herein.

The Disclosure Statement component of the pleading is being sent to all Creditors of the Debtor and of its bankruptcy estate, for the purpose of disclosing information which the Bankruptcy Court has determined is material, important and necessary for such Creditors to arrive at a reasonably informed decision in exercising the right to vote for acceptance or rejection of the Debtor's Plan. This Disclosure Statement describes various transactions contemplated under the Plan.

### B. Explanation of Chapter 11 and Cases under Chapter 11

Chapter 11 is the principal reorganization chapter of the Bankruptcy Code.  Pursuant to Chapter 11, a debtor is authorized to reorganize its business for its own benefit and that of its creditors. Chapter 11 also contemplates that a debtor, or a trustee of a debtor, may take advantage of the administrative aspects available in a Chapter 11 case to realize either an orderly liquidation or reorganization of the debtor's estate.

Formulation of a plan of reorganization is the principal purpose of a Chapter 11 reorganization case. A plan of reorganization sets forth the means for satisfying claims against a debtor. After a plan of reorganization has been filed, it must be accepted by holders of claims against a debtor. Section 1125 of the Bankruptcy Code requires full disclosure before solicitation of acceptances of a plan of reorganization. This Disclosure Statement is presented to Creditors, and parties in interest, to satisfy the requirements of Section 1125 of the Bankruptcy
Code.

There are two methods by which a plan can be confirmed: (1) the "acceptance" method, in which all impaired classes of claims and interests vote in the requisite amounts to accept the plan, or (2) the "nonacceptance" or "cram down" method, in which at least one class of impaired claims or interests votes in the requisite amounts to accept the plan and certain other requirements are met with respect to all other

impaired classes of claims and interests, such that the Bankruptcy Court is nonetheless authorized to confirm the Plan.

A claim that will not be repaid in full or as to which the legal rights are altered, or an interest that is adversely affected, is impaired. A holder of a claim or interest that is impaired by a plan is entitled to vote to accept or reject that plan if such claim or interest has been allowed or is deemed allowed under Section 502 of the Bankruptcy Code, or is temporarily allowed for voting purposes under Rule 3018 of the Bankruptcy Rules.

Chapter 11 does not require that each holder of a claim against a debtor vote in favor of a plan of reorganization in order for such plan to be confirmed by the Bankruptcy Court; rather, Chapter 11 provides that acceptance is obtained by aggregating the votes of similarly situated creditors by classes. **In order for a class of claims to accept a plan, votes representing at least two-thirds in amount and more than one-half in number of claims that actually vote in that class must be cast for acceptance of the plan.**

Regardless of the acceptance of a proposed plan by any or all of the classes of claims, the plan, to be confirmable, must comply with certain designated provisions of the Bankruptcy Code, specifically, Section 1129.  Section 1129 sets forth the requirements of confirmation and, among other things, requires that a plan of reorganization be in the best interests of claimants.

The Bankruptcy Court may confirm a plan of reorganization even though less than all of the classes of claims accept the plan of reorganization.  Specifically, the Bankruptcy Court must find that the plan is fair and equitable with respect to each impaired class that does not accept the plan. Confirmation of a plan of reorganization over the objection of one or more classes of claims or interests is generally referred to as a "cram-down."  With respect to a class of secured creditors, the fair and equitable test requires that a secured creditor (i) retain its lien(s) and receive cash payments equal to the allowed amount of its claims, (ii) receive the proceeds from the sale of its collateral, or (iii) realize the indubitable equivalent of its claim. With respect to a class of unsecured claims, subject to certain exceptions, the fair and equitable test, also referred to as the "Absolute Priority Rule," requires that if the creditors in such class do not receive property with a value equal to the alleged amount of their claims, no junior class can receive anything pursuant to the plan. In other words, if the full present value of unsecured claims is not proposed to be paid in the plan, then the Debtor's interest holders cannot retain their stock interests, unless the unsecured classes vote in favor of the plan.

The Plan proposes that the Unsecured Claimants will receive 20%, with interest, of their Allowed Claims. The Interest holders will not be entitled to receive distributions on account of their stock interests if there are any defaults on payments required under the Plan, including to the Unsecured Claimants. Accordingly, the Debtor believes that it is in the Interest holders' interests to ensure that all Plan payments are made as required under the Plan, including payments to the holders of Unsecured Claims. Moreover, the Debtor believes that the continued ownership of and involvement with the Debtor and Reorganized Debtor by the present management are critical to post-petition operations, the financial success of the Plan and the ability to make the required Plan payments, in part because the present management are the most knowledgeable person to run the business and own the land on which the Debtor operates. For these reasons, the Debtor urges all Creditors to vote in favor of the Plan as the best opportunity for recovery on Claims against the Debtor.

The Debtor's interest holder will retain his stock interests in the Debtor. The Debtor is requesting that the Unsecured Claimants vote in favor of the Plan.

In the event that all impaired Classes do not vote to accept the Plan, the Debtor will nonetheless seek Confirmation of the Plan through a cram-down of the objecting Classes of Creditors.

## ARTICLE III
## HISTORY OF THE DEBTOR AND SUBSEQUENT OPERATIONS

**A. Debtor's Background**

On June 19, 2018, the Debtor filed a voluntary petition for reorganization under chapter 11 Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Texas, Amarillo Division.

After the filing of the bankruptcy petition, the Debtor was authorized to continue in business under the protection of the Bankruptcy Code and to attempt to work out an arrangement with Creditors on a plan for payment of their debts. This document explains how the Debtor proposes to pay their Creditors. If the Bankruptcy Court approved this plan, Creditors' rights to collect their debt will be limited by federal lay (the Bankruptcy Code). If the Debtor's plan is approved, Creditors will only be allowed to collect from the Debtor as provided in this document.

**Overview**

Damor Supply, later known as Galmor's Inc., was started in 1964 by Bob Galmor, Steve Galmor's father. Micahel Steve Galmor "Steve Galmor" worked alongside his father for many years. He eventually moved to Elk City, Oklahoma and started his own company, G&G Steam Service, Inc. Galmor's Inc. suffered some hardships financially and in 2000 Bob Galmor signed the company over to Steve Galmore.

Steve Galmore was able to make both companies profitable and grew his employee base to 190 plus people. Steve Galmore provided pipeline installation, roustabout services, downhole pump repair, parts, and rock for oilfield locations, along with dirt work, building locations, clean up and restoration for oil spills and any other necessary oilfield related service. Galmor's provided these services for many of the major oil and gas companies in a 250 mile radius of Elk City, Oklahoma, including Conoco Phillips, Apache, and Chesapeake. Galmor's also worked for several pipeline companies and smaller companies throughout the area.

Galmor's Inc. and G&G Steam Service, Inc., both owned by Steve Galmor, merged into one company, Galmor's/G&G Steam Service, Inc. in 2011. The company continued to be profitable over the past years even with the fluctuating oil and gas prices.

Steve Galmor sold part of his company in May of 2015 and continued to operate the remainder of his company which included rock quarries, pump repair and oilfield supply company.

**History and Events Leading up to Bankruptcy**

Even though the company became substantially smaller, the oilfield down-turn in 2015 devastated the company. Steve had been able in past years to pull it out of financial crisis but this downturn affected every aspect of the oil and gas industry.

In 2016, Galmor's set up a new Roustabout division to generate more revenue. This side of the company services the panhandle of Texas and the western half of Oklahoma.

Many of the major companies began selling parts of their companies and restructuring internally. The demand for Galmor's services diminished along with the demand for the Rock Quarry services as there was no new drilling of locations or upkeep of oilfield locations and roads that required rock and maintenance. Galmor's had a large obligation of debt toward machinery that was used in the Quarries. Most of the equipment was repossessed and then Galmor's was faced with lawsuits from creditors. Payments on machinery, payroll taxes and creditors fell behind.

The bankruptcy case was filed on June 19,2018.

2.      **Post Petition Operations/Current Status**

Galmor's has since continued to work with a very reduced work force of less than 25 people and has jobs lined up to continue work in the future. Steve Galmor feels that he will be able to pay the creditors and pay all back taxes. He has plans to sell personal ranch land to help relieve the large amount owed to the IRS. With the help of the Bankruptcy Court to structure payments to the creditors and the changes that are being made internally, such as reduction of the work force and close monitoring of overtime, closing unnecessary accounts such as cable TV for the office, monitoring utilities, fuel, and purchases closely to make sure that only the absolute necessary amounts and items are purchased, Steve feels that Galmor's will be able to move forward and once again become the profitable company it once was.

The Debtor's assets as of the Petition Date, including, accounts, fixtures, furniture, equipment and inventory totaled a approximately $4 million. Debtor's liabilites exceed $5.7 million. More complete information is set forth on the Debtor's Schedules. A complete copy of the Debtor's Schedules are available from the Court's PACER docket [http://www.txwb.uscourts.gov/pacer/] or by written request submitted to counsel for the Debtor via facsimile at (806) 368-9785, via e-mail at max@tarboxlaw.com or via mail to Max R. Tarbox, Tarbox Law, P.C., 2301 Broadway, Lubbock, Texas 79401. 79401.

3.      **The Debtor's Liquidation Analysis** is set forth below in paragraph 5. It is the Debtor's intent to pay all secured claims in full, plus interest, and unsecured claims 10% of their claim, with interest.

The Claim amounts set forth in the Plan are based upon the amounts set forth in the Debtor's schedules and allowed proofs of claim.

The Debtor believes that the Secured Creditors are accurately listed in the Schedules.

4.      **Creditors' Committee**

No creditors' committee has been formed at this time.

5.      **What if the Debtor was Liquidated instead of Reorganized?**

Section 1129(a) of the Bankruptcy Code states that the Bankruptcy Court may confirm a plan of reorganization only if certain requirements are met. One of the requirements is that each non-accepting holder of an allowed claim or interest in an impaired class must receive or retain under the plan on account of such claim or interest, property having a value as of the effective date of the plan at least equal to the value that such holder would receive if the Debtor wasliquidated under Chapter 7 of the Bankruptcy Code on the effective date.

The following is an analysis which assumes a hypothetical Chapter 7 liquidation in which a chapter 7 trustee would have liquidated all of the assets of the Debtor. Such values are estimates only.

| Description | Value | Liens | Net |
|---|---|---|---|
| **Real Property:** | | | |
| Office Building in Elk City, Oklahoma | $200,000.00 | $42,000.02 | $139,972.54 |

| Description | Value | Liens | Net |
|---|---|---|---|
| Storage Building in Shamrock, Texas | $15,000.00 | 00.00 | $15,000.00 |
| Total: | $215,000.00 | $42,000.02 | $154,972.50 |

| Description | Value | Liens | Net |
|---|---|---|---|
| **Personal Property:** | | | |
| Checking Accounts | $13,972.54 | 00.00 | $13,972.54 |
| Accounts Receivable | $421,978.50 | 00.00 | $421,978.59 |
| Office Furniture | $10,000.00 | 00.00 | $10,000.00 |
| Office Equipment | $10,000.00 | 00.00 | $10,000.00 |
| 2013 MGL Conveyor | $45,000.00 | 00.00 | $45,000.00 |
| 2013 Kleeman Cone Crusher | $350,000.00 | $209,000.00 | $141,000.00 |
| Vehicles & Equipment | $625,600.00 | 00.00 | $625,600.00 |
| Vehicles & Equipment | $1,250,483.59 | $1,250,483.59 | 00.00 |
| Causes of Action against Galmor Family LLP | $186,341.19 | 0.00 | $186,341.19 |
| Causes of Action against Galmor Family LLP | $384,902.74 | 0.00 | $384,902.74 |
| Causes of Action against Galmor Family LLP | $24,807.39 | 0.00 | $24,807.39 |
| Causes of Action against Galmor Family LLP | $500,000.00 | 0.00 | $500,000.00 |
| **Total Personal** | **$3,823,086.04** | **$1,459,483.59** | **$2,363,602.45** |
| **Total R & P:** | $4,038,086.04 | 1,501,483.61 | $2,528,574.952 |

Less:

| | |
|---|---|
| Estimated Ch. 7 Professionals' Fees & Expenses: | $20,000.00 |
| Estimated Ch. 7 Trustee's Fees & Expenses: | $50,000.00 |
| Priority Claims: | $2,562,645.28 |
| Liquidation Expenses: | $20,000.00 |
| Total: | $2,652,645.28 |

Estimated value available for unsecured claims in Ch. 7 case: $00.00.

The approximate scheduled value of total allowed unsecured claims is $3,469,387.28.

**6. Current Financing**

Debtor is not receiving financing while in Chapter 11.

## D. Management Under the Plan

Michael Stephen Galmor is the sole owner and President of the Debtor. Upon confirmation, he will continue to serve in these positions.

Upon Confirmation of the Plan, Reorganized Debtor intends to operate its business as determined by its officers, directors and shareholders, and to comply with the terms of the Plan as Confirmed and/or as it may be amended from time to time. The liability for and obligations under the Plan shall be assumed by and become obligations of the Reorganized Debtor.

## E. Significant Events in Chapter 11.

**1. Employment of Professionals.**

On June 20, 2018, the Debtor filed a motion to employ Max Tarbox of Tarbox Law, P.C. as attorney for the Waggoner Cattle entities in these bankruptcy cases. [doc. no. 2]. On September 24, 2018, the employment of Tarbox Law, P.C. was approved by the Bankruptcy Court. [doc. no.77].

On September 7, 2018, the Debtor filed a motion to employ the Law Firm of Barber & Bartz as Special Counsel for the Debtor, to address tax liabilities claimed by the State of Oklahoma. On October 4, 2018, the employment of the Law Firm of Barber & Bartz was approved by the Bankruptcy Court.

**2. Meeting of the Creditors and Bar Date.**

On August 2, 2018, the United States Trustee conducted the section 341 meeting of creditors. Michael Stephen Galmor appeared for the Debtor. The meeting was concluded. Proofs of Claims are due by October 31, 2018.

## F. Source Of Information

The financial information contained herein was prepared by the manager of the Debtor. The historical financial information was obtained from the Debtor's books and records. The estimated Claims set forth in this Disclosure Statement were determined from the Debtor's books and records, the Schedules and discussions with various Creditors.

**ARTICLE IV.**
**SUMMARY OF THE PLAN**

**A.    Overview of the Plan**

The Plan contemplates the continued operations by the Debtor and payment in full to all of the allowed amount on secured claims and payment of 10% of claims of unsecured claims to be paid over a ten year period. It is anticipated that the Plan will be fully consummated ten years from the Effective Date. The Debtor expressly reserves the right to pay Creditors earlier than the ten year time period if cash flow permits.

**B.    Funding of the Plan**

The Plan will be funded by the Debtor's continued operations of its cattle business.

**C.    Classification and Treatment of Claims Against and Interests in the Debtor**

The Plan classifies and treats various Classes of Creditors of the Estate. The following is a summary of classification and treatment of Creditors' Claims under the Plan.

**ARTICLE V**
**CLASSIFICATION OF CLAIMS AND INTERESTS**

The Bankruptcy Code requires the debtor to divide creditors into classes.  That is, creditors with similar legal rights are put into the same class. For purposes of proposing plan payment treatment, the secured creditors are put into separate classes, unless more than one creditor is secured by the same collateral.  Administrative claimants are also put in separate classes.  The classes claims and interests shall be classified as follows:

Administrative Expenses

    Professionals Fees

Class 1: Priority Claimants

   Class 1:     Internal Revenue Service

   Class 2:     Oklahoma Tax Commission

   Class 3:     Oklahoma Employment Security Commission

   Class 4:     Texas Taxing Entities

      a.    Texas Workforce Commission
      b.    Texas Workforce Commission
      c.    Texas Comptroller of Pubic Accounts
      d.    Texas Comptroller of Pubic Accounts

   Class 5:     County Taxing Authorities

      a.    Beckham County Treasurer
      b.    Wheeler County

Class 6:     Great Plains National Bank

        a:  Real Estate
        b:  Equipment

Class 7.     Wells Fargo Equipment Finance

Class 8:     Caterpillar Financial Services Corporation

Class 9:     Unsecured Creditors

Class 10:    Equity Owner

All classes, except equity owners, are impaired by virtue of 11 U.S.C. § 1124(1) and are entitled to vote.

### ARTICLE VI

**A.      What about Administrative Payments?**

Administrative claimants consist of the Debtor's professionals retained to work in this case.

**Max R. Tarbox** of Tarbox Law, P.C. is the attorney currently representing the Debtor in this case. It was paid a retainer of $25,000.00 at the beginning of the case. It is unknown at this time what the final fees will be. All fees and expenses will be submitted to the Court for final approval at the conclusion of the case. Any fees owing above the retainer will be due the later of an order approving claimants fee application or 30 days following confirmation. Parties can object to fee applications if they so desire.

The **Law Firm of Barber & Bartz** has been retained to service as special tax counsel for the Debtor.

All other payments to allowed administrative claims to professionals will be due and payable within 30 days from the date this Court enters an Order approving their respective compensation, unless other arrangements are agreed between the Debtor and the professional.

**B.      What about Priority Claimants?**

**Class 1** is the **Internal Revenue Service** for the amount of $1,404,695.71. The IRS has a priority claim in the amount of $1,060,827.51. The Debtor is still negotiating with the IRS regarding the total amount of its claim. However, should the IRS be paid the full, priority amount of its current claim, the Debtor proposes to pay the claim over 70 months at 3.0% interest, the first payment being made on January 15, 2019, with monthly payments of $16,538.26. The first payment will include an additional amount of $15,694.43 to compensate for unpaid interest from the date the petition was filed. Subsequent payments in the amount of $16,538.26 will be made on the 15th of each month thereafter. Such payments will result in the entire claim being paid in full in 70 months and, in any event, will be made until the entire claim is paid in full. The IRS reserves and preserves all of its rights to enforce this treatment.

The unsecured portion of the claim will be treated in Class 9.

Additional conditions and terms for the payment of the Internal Revenue Service claim:

**Events of Default**. The occurrence of any of the following shall constitute an event of default under the Plan:

1) **Failure to Make Payments.** Failure on the part of Debtor to pay fully when due any payment required to be made in respect of the Plan Debt. However, due to the size and ongoing nature of the IRS's claim, upon a default under the plan, the administrative collection powers and the rights of the IRS shall be reinstated as they existed prior to the filing of the bankruptcy petition, including, but not limited to, the assessment of taxes, the filing of a notice of Federal (or state) tax lien and the powers of levy, seizure, and as provided under the Internal Revenue Code. As to the IRS:

(A)  If the Debtor fails to make any plan payment, or deposits of any currently accruing employment or sales tax liability; or fails to make payment of any tax to the Internal Revenue Service within 10 days of the due date of such deposit or payment, or if the Debtor failed to file any required federal or state tax return by the due date of such return, then the United States may declare that the Debtor is in default of the Plan. Failure to declare a default does not constitute a waiver by the United States of the right to declare that the successor in interest or Debtor is in default.

(B)  If the United States declares the Debtor or the successor in interest to be in default of the Debtor's obligations under the Plan, then the entire imposed liability, together with any unpaid current liabilities, may become due and payable immediately upon written demand to the Debtor or the successor in interest.

( C)  If full payment is not made within 14 days of such demand, then the Internal Revenue Service may collect any unpaid liabilities through the administrative collection provisions of the Internal Revenue Code. The IRS shall only be required to send two notices of default, and upon the third event of Default the IRS may proceed to collect on all amounts owed without recourse to the Bankruptcy Court and without further notice to the Debtor. The collection statute expiration date will be extended from the Petition Date until substantial default under the Plan. All payments will be sent to: IRS, 1100 Commerce Street, Dallas, TX 75242, M/S 5026 DAL.

(D)  The Internal Revenue Service shall not be bound by any release provisions in the Plan that would release any liability of the responsible persons of the Debtor to the IRS. The Internal Revenue Service may take such actions as it deems necessary to assess any liability that may be due and owing by the responsible persons of the Debtor to the Internal Revenue Service; but the Internal Revenue Service shall not take action to actually collect from such persons unless and until there is a default under the Plan and as set forth above.

**Class 2** is the **Oklahoma Tax Commission** for the amount of $1,121,148.86.  The Oklahoma Tax Commission has a priority claim in the amount of $801,263.22.  The Debtor is still negotiating with the Oklahoma Tax Commission regarding the total amount of its claim.  However, should the Oklahoma Tax Commission be paid the full, priority amount of its  current claim.  The Debtor proposes to pay the claim over 70 months at 3.0% interest, the first payment being made on January 15, 2019, with monthly payments of $12,491.66.  The first payment will include an additional amount of $11,854.31 to compensate for unpaid interest from the date the petition was filed.  Subsequent payments in the amount of $12,491.66. will be made on the 15th of each month thereafter.  Such payments will result in the entire claim being paid in full in 70 months and, in any event, will be made until the entire claim is paid in full. The Oklahoma Tax Commisson reserves and preserves all of its  rights to enforce this treatment.

The unsecured portion of the claim will be treated in Class 9.

**Class 3** is the **Oklahoma Employment Security Commission** ("OESC") for the amount of $1,121,148.86. The Oklahoma Tax Commission has a priority claim in the amount of $801,263.22. The Debtor is still negotiating with the OESC regarding the total amount of its claim. However, should the OESC be paid the full, priority amount of its current claim. The Debtor proposes to pay the claim over 50 months at 3.0% interest, the first payment being made on January 15, 2019, with monthly payments of $567.55. The first payment will include an additional amount of $394.19 to compensate for unpaid interest from the date the petition was filed. Subsequent payments in the amount of $567.55. will be made on the 15ᵗʰ of each month thereafter. Such payments will result in the entire claim being paid in full in 70 months, in any event, will be made until the entire claim is paid in full. The OESC reserves and preserves all of its rights to enforce this treatment.

The unsecured portion of the claim will be treated in Class 9

**Class 4** is the claim of the **Texas Taxing Authorities** which arises from a pre-petition priority claim which total $15,473.47.[1] These claims will be paid as follows:

    a.        **Texas Workforce Commission.** The claim is $6,028.11. The Texas Workforce Commission ("TWC") has a priority claim in the amount of $5,956.22. Debtor will pay the full, priority amount of its current claim. The Debtor proposes to pay the claim over 50 months at 3.0% interest, the first payment being made on January 15, 2019, with monthly payments of $126.87. The first payment will include an additional amount of $88.12 to compensate for unpaid interest from the date the petition was filed. Subsequent payments in the amount of $126.87. will be made on the 15ᵗʰ of each month thereafter. Such payments will result in the entire claim being paid in full in 50 months and, in any event, will be made until the entire claim is paid in full. The TWC reserves and preserves all of its rights to enforce this treatment.

            The unsecured portion of the claim will be treated in Class 9.

    b.        **Texas Workforce Commission.** The claim is $54.03. The Texas Workforce Commission ("TWC") has a priority claim in the amount of $54.03. Debtor will pay the full, priority amount of its current claim. The Debtor proposes to pay the claim over 1 month at 3.0% interest, the payment being made on January 15, 2019, with a payment of $54.17. The payment will include an additional amount of $00.80 to compensate for unpaid interest from the date the petition was filed. Such payment will result in the entire claim being paid in full in 1 month and, in any event, will be made until the entire claim is paid in full. The TWC reserves and preserves all of its rights to enforce this treatment.

    c.        **Texas Comptroller of Public Accounts.** The claim is $4,074.33. The Texas Comptroller of Public Accounts ("TCPA") has a priority claim in the amount of $4,074.33. Debtor will pay the full, priority amount of its current claim. The Debtor proposes to pay the claim over 48 months at 3.0% interest, the first payment being made on January 15, 2019, with monthly payments of $90.18. The first payment will include an additional amount of $60.28 to compensate for unpaid interest from the date the petition was filed. Subsequent payments in the amount of $90.18. will be made on the 15ᵗʰ of each month thereafter. Such payments will result in the entire claim being paid in full in 48 months and, in

---

[1]     Any county or city taxing authority that is not listed below but is in fact owed taxes will be treated the same as the other taxing authorities treated in Class 4a.

any event, will be made until the entire claim is paid in full. The TCPA reserves and preserves all of its rights to enforce this treatment.

The unsecured portion of the claim will be treated in Class 9.

d. **Texas Comptroller of Public Accounts.** The claim is $5,317.00. The Texas Comptroller of Public Accounts ("TCPA") has a priority claim in the amount of $5,317.00. Debtor will pay the full, priority amount of its current claim. The Debtor proposes to pay the claim over 48 months at 3.0% interest, the first payment being made on January 15, 2019, with monthly payments of $117.69. The first payment will include an additional amount of $78.66 to compensate for unpaid interest from the date the petition was filed. Subsequent payments in the amount of $117.69 will be made on the 15th of each month thereafter. Such payments will result in the entire claim being paid in full in 48 months and, in any event, will be made until the entire claim is paid in full. The TCPA reserves and preserves all of its rights to enforce this treatment.

The unsecured portion of the claim will be treated in Class 9.

**Class 5** is the claim of the **County Taxing Authorities** which arises from a pre-petition priority claim which total $52,433.88.[2] These claims will be paid as follows:

a. **Treasurer of Beckham County, Oklahoma.** The claim is $3,643.30. The Treasurer of Beckham County, Oklahoma has a priority claim in the amount of $3,643.30. Debtor will pay the full, priority amount of its current claim. The Debtor proposes to pay the claim over 50 months at 12.0% interest, the first payment being made on January 15, 2019, with monthly payments of $215.60. The first payment will include an additional amount of $92.95 to compensate for unpaid interest from the date the petition was filed. Subsequent payments in the amount of $215.60. will be made on the 15th of each month thereafter. Such payments will result in the entire claim being paid in full in 50 months and, in any event, will be made until the entire claim is paid in full. The Treasurer of Beckham County, Oklahoma reserves and preserves all of its rights to enforce this treatment.

b. **Wheeler County, Texas.** The Debtor believes the claim of Wheeler County has been paid in full.

## C. What about the Secured Creditors?

**Class 6** is the claim of the **Great Plains National Bank** which arises from its pre-petition secured claims. These claims will be paid as follows:

a. **Real Estate.** The claim is $16,573.30.

This claim is a debt of Galmor's Inc. and therefore is not a proper claim in ths bankruptcy case.

a. **Equipment.** The claim is $1,261,752.41. Great Plains Bank has a secured claim in the amount of $1,261,752.41. The Debtor has been paying this claimant

---

[2] Any county or city taxing authority that is not listed below but is in fact owed taxes will be treated the same as the other taxing authorities treated in Class 4a.

monthly adequate protection payments in the amount of $5,000.00, and such payments will be applied to this claim.

Debtor will pay the full, secured amount of its current claim. The Debtor proposes to pay the claim over 72 months at 6.0% interest, the first payment being made on January 15, 2019, with monthly payments of $20,910.88. The first payment will include an additional amount of $37,334.04 to compensate for unpaid interest from the date the petition was filed. Subsequent payments in the amount of $20,910.88 will be made on the 15th of each month thereafter. Such payments will result in the entire claim being paid in full in 72 months and, in any event, will be made until the entire claim is paid in full. Great Plains Bank reserves and preserves all of its rights to enforce this treatment.

Any unsecured portion of this claim will be treated in Class 9.

**Class 7** is the claim of **Wells Fargo Equipment Finance** ("Wells Fargo") which arises from a claim secured by commercial equipment in the amount of $210,922.80. The Debtor has been paying this claimant monthly adequate protection payments in the amount of $4,000.00, and such payments will be applied to this claim.

This claim will be paid over 72 months at 6.0% interest with payments beginning January 15, 22019, resulting in monthly payments of $3,495.60. The claim will accrue interest from the date of filing; i.e. June 19, 2018. The first payment will include an additional amount of $6,241.00 to compensate for unpaid interest from the date the petition was filed. Subsequent payments will be made on the 15th of each month thereafter. Such payments will result in the entire claim being paid in full in 72 months from the petition date. Wells Fargo reserves and preserves all of its rights to enforce this treatment. Equify will retain its lien until the claim is satisfied in full.

**Class 8** is the claim of **Caterpillar Financial Services Corporation.** The Debtor believes this claim has already been fully satisfied.

**D.     What about Unsecured Payments?**

**Class 9** are the **Unsecured Claims** that total $3,469,387.28.[3]

A list of unsecured claims is set forth in the attached Exhibit "A".

The claimants will receive ten percent (10.0%) of their respective claims over a 10 year term (accruing interest from the petition date), to be paid on a monthly basis, **beginning January 15, 2019** at 3.0% interest. Subsequent payments will be made on the 9th of each month thereafter.

The Plan calls for 120 monthly payments each of $3,350.07. The first payment will include an additional total amount of $5,132.79 to compensate for unpaid interest from the date the petition was filed. Claimants will receive their pro-rata share of each payment, based upon the percentages set forth in Exhibit "A."

---

[3]     Trade creditor claims are established by using scheduled amount. However, if a proof of claim amount is filed and allowed, the proof of claim amount will be used.

Debtor reserves the right to prepay a claim at the balance amount of the claim at the time of the payment. Debtor also reserves the right to settle a claim with a claimant at an amount agreeable to both the Debtor and the affected claimant.

No claimant of this Class shall have or retain any lien against the Debtor upon Confirmation of the Plan.

**E.  What about Equity Owners?**

**Class 10** is the **Equity Owners**. The member of this Class shall retain his equity interest that he owned when the case was filed. Note that the Plan does not pays all claimant in full, therefore it is the opinion of the Debtor that the retention of his equity interest does violate the absolute priority rule.[4]

**PLEASE NOTE THAT THE DEBTOR RESERVES THE RIGHT TO OBJECT TO THE ALLOWANCE OR AMOUNT OF ANY CLAIMS REFERRED TO ABOVE OR IN THE ATTACHED EXHIBITS.**

**ARTICLE VII**

**HOW DOES THE DEBTOR PROPOSE TO PAY ITS DEBTS?**

**Section 7.1.** Creditors Have the Right to Vote on the Plan.

**Section 7.2.** After reading this plan and disclosure statement, Creditors will have the right to vote on whether the Bankruptcy Court should "confirm" the Debtor's plan. Each creditor should read this combined plan and disclosure statement carefully, discuss it with a lawyer, and then fill out the ballot that will be provided. Debtor's lawyer will assemble the ballots and report to the Bankruptcy Judge on _____, 2018 at _____ at the U.S. Bankruptcy Courtroom, 205 Southeast 5th Ave., Amarillo, Texas 79101-1559. At that time the Court will conduct the "Confirmation Hearing" in this case and decide whether to "confirm" the plan.

**Section 7.3. Creditors Have the Right to Object to Confirmation of the Plan.** If a Creditor believes that the plan does not meet the requirements of the Bankruptcy Code, the Creditor may file a written objection with the Bankruptcy Court. The deadline for objections to confirmation of the plan has been set by the Court as: _____ .

**Section 7.4  The Court May Approve the Debtor's Plan and Limit Creditors' Legal Rights.** The Court will consider only the written objections to confirmation of the plan that are timely filed and the ballots that are timely filed. If no objections are filed (or if all objections are overruled by the Court) and if at least one class of creditors accepts the plan, the Court may approve the plan. If the Court approves the plan, all creditors will be bound, even if a Creditor did not vote and even if a Creditor voted against the plan. This means that a Creditor will not be allowed to collect his claim against Debtor except as provided in this plan.

**Section 7.5. How Does a Class "Accept" the Plan?** Each class is considered separately. Only the creditors who vote are counted. The Court will conclude that the class "accepts" the plan if two requirements are met:

---

[4]     The absolute priority rule requires that creditors be paid from a bankruptcy estate in an established order and that those parties at the back of the line, such as equity holders, wait until the claims of those who precede them in priority are paid in full. § 1129(b)(2)(B)(ii)

1.      More than 50% of the voting creditors vote in favor of the plan; and

2.      Those creditors voting in favor of the plan hold at least 2/3 of the total amount of debt that is voted.

**Section 7.6.  What If a Creditor is not listed in this Plan?**  This Plan and its Exhibits list all creditors who will have an allowed claim.  The proof of claim deadline was August 22, 2018.  All unsecured claims that the Debtor agrees to pay (or that are not disputed) are listed on Exhibit "A".  If an unsecured Creditor's claim is not listed in Exhibit "A", the Debtor will not pay any money to that Creditor.

## ARTICLE VIII
## PLAN IMPLEMENTATION PROCEDURE

**Section 8.1.**  The Debtor will remain in possession of their property and will control the operation and disposition thereof unless otherwise provided in this Plan.  The 100% owner of Galmor's/G&G Steam Service, Inc. is Michael Stephen Galmor.

**Section 8.2.**  The Debtor will devote full time and energy to the successful completion of the Plan.

**Section 8.3.**  Funding. Based on current income and expense projections, the Debtor reasonably expects to generate enough net income to fund this Plan.

**Section 8.4.**  A copy of the Debtor's latest Monthly Operating Report is attached as Exhibit "B".

## ARTICLE IX
## EXECUTORY CONTRACTS

**Section 9.1**     Debtor assumes the contract it has with Dennis Hefley.  Debtor leases a rock pit in Gageby, Texas.  Debtor pays $1.50 per ton of rock they take from the rock pit.

**Section 9.2**     Debtor assumes the contract it has with the Galmor Family Limited Partnership.  Debtor leases a rock pit in Twitty, Texas.  Debtor pays $.50 per ton of rock taken from rock pit.

## ARTICLE X
## PENDING LITIGATION

**Section 10.1**     Debtor and Michael Stephen Galmor intend to mediate with his siblings regarding the bankruptcy cases of Galmor's/G&G Steam Service, Inc. and Michael Stephen Galmor, as will as family entities.  Tom Riney of Amarillo, Texas is to serve as the mediator.

**Section 10.2**     On September 4, 2018, Leslie Pritchard filed an Adversary Complaint [Case No. 18-02010] against Michael Stephen Galmore and Galmor's/G&G Steam Service, Inc.  Plaintiff seeks actual and exemplary damages for actions allegedly taken by plaintiffs in managing the Galmor family's property, partnership and trusts. Pritchard claims to file the case derivatively and on behalf of the Estate of Shirley Jo Galmor, Galmor Family Limited Partnership, Galmor Management, LLC, Bobby Don and Shirley Jo Galmor Living Trust, Galmor Family Trust, and Galmor Contribution Trust.

## ARTICLE XI
## ARE THERE ANY ALTERNATIVES TO THIS PLAN?

**Section 11.1** The only alternative is liquidation. The Debtor believes that if all its assets were liquidated, the Creditors would not receive payment as proposed.

## ARTICLE XII
## IS THERE ANY RISK THAT THE PLAN MIGHT NOT SUCCEED?

**Section 12.1** Yes. The Debtor cannot predict the future, but believes it can make the proposed plan payments.

## ARTICLE XIII
## ARE THERE ANY TAX EFFECTS OF THIS PLAN?

**Section 13.1** The Debtor does not believe that this plan creates any special tax consequences.

**Section 13.2** Tax Effects to Creditors: Creditors should consult with their own respective tax advisor.

## ARTICLE XIV
## DEBTOR'S OBLIGATION TO THE U.S. TRUSTEE

**Section 14.1** During the pendency of this bankruptcy case, the Debtor will comply with all regulations promulgated by the Office of the U.S. Trustee, including remaining current on all quarterly fees assessed against the estate by the U.S. Trustee.

## ARTICLE XV
## RETENTION OF JURISDICTION

**Section 15.1** The Court shall retain jurisdiction of this case pursuant to the provisions of Chapter 11 of the Bankruptcy Code until the final allowance or disallowance of all claims and final determination with respect to all matters including the following:

a.      To enable the Debtor to consummate any and all proceedings that they may bring to set aside liens or encumbrances to determine the validity, extent and enforceability of any lien or to recover any preferences, transfer, assets or damages to which it may be entitled under applicable provisions of the Bankruptcy Code or other federal, state, or local law. Specifically, the Debtor shall be authorized before or after confirmation to bring any action against any party arising before or after confirmation;

b.      To adjudicate all controversies concerning the classification or allowance or reconsideration of allowances of any claim or any security interest, including without limitation, to liquidate claims in connection with any disputed, contingent or unliquidated claims;

c.      To hear and determine all claims arising from the rejection or assumption of any executory contracts, including leases and to consummate the rejection and determination thereof;

d.      To adjudicate all claims to a security or ownership interest in any of the Debtor's property or any proceeds thereof;

e.      To adjudicate all claims or controversies arising out of any purchases, sales, or contracts made or undertaken by the Debtor during the pendency of the proceedings;

f.      To recover all assets and properties of the Debtor wherever located;

g.      To adjudicate all claims pertaining to preferences and fraudulent transfers;

h.      To apply to the Court any time after confirmation for authority to consummate a sale of the estate assets, provided, the Debtor shall not be required to do so, as long as the Debtor is otherwise in compliance with the provisions of the plan;

i.      To determine the reasonableness of and make any award for administrative expenses, including attorney's fees applied for before or after the plan confirmation date, and to provide for payment thereof.

j.      To determine the value of the claimant's collateral, if such value or values are in dispute.

k.      Additionally, the Court shall retain exclusive jurisdiction in the future for the purpose of determining whether or not a default has occurred and for the purpose of granting any remedy to any creditor hereunder which is authorized by the Bankruptcy Code.

## ARTICLE XVI
## PLEASE VOTE FOR THE DEBTOR'S PLAN!

**Section 16.1** The Debtor asks that Creditors vote in favor of the Debtor's plan because it will allow the Debtor to pay Creditors all of their claims.  The Debtor believe that the plan will pay the proposed payments to its creditors.

**Section 16.2 Acceptances.**  For there to be an acceptance of the Plan by a Class of Claimants, Claimants who hold at least two-thirds in dollar amount of the Claims voted and constitute more than one-half in the number of holders of such Claims voting must vote to accept the Plan.

**Section 16.3**  REMEMBER THAT THE DEADLINE FOR BALLOTS IS _____, 2018. Mail your ballot to:

> Max R. Tarbox; SBN: 19639950
> TARBOX LAW, P.C.
> 2301 Broadway
> Lubbock, Texas 79401
> (806) 686-4448; fax: (806) 368-9785

In order to be counted, Ballots must be received at the foregoing address not later than 4:00 p.m., [TBA].

Dated:  October 17, 2018

Approved:


  /s/ Michael Stephen Galmor_____
Michael Stephen Galmor
as President of Galmor's/G&G Steam Service,

Respectfully submitted,

TARBOX LAW, P.C.
2301 Broadway
Lubbock, Texas 79401
(806) 686-4448; fax: (806) 368-9785


By:   /s/ Max R. Tarbox
Max R. Tarbox, Texas Bar No. 19639950
*Attorney for Galmor's/G&G Steam Service, Inc.*

U:\Chap 11 Debtor\Galmor-G&G's Steam Service, Inc\Plan\Plan.wpd